**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td>CHEMIST CORNER, INC., et al.,</td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil Case No.: SAG-19-0331</td></tr>
<tr><td>EPIC PHARMACY NETWORK, INC.,</td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED MEMORANDUM OPINION[1]

Plaintiffs Chemist Corner, Inc. d/b/a Medex Medicine Express ("MedEx"), Monsey Family Drug Store, LLC d/b/a Maple Pharmacy ("Maple"), Maple Rx, LLC d/b/a Westgate Pharmacy ("Westgate"), Madison Rx LLC d/b/a Madison Pharmacy ("Madison"), and Refuah Rx LLC d/b/a Refuah Pharmacy ("Refuah") (collectively "Plaintiffs") filed a First Amended Complaint against Defendant Epic Pharmacy Network Inc. ("Epic"), alleging six claims including conversion, negligent breach of fiduciary duty, breach of contract, and violations of the Maryland and New York consumer protection statutes. ECF 17. Epic has filed a Motion to Dismiss Counts Five and Six, ECF 20, along with a supporting memorandum of law (collectively, the "Motion"). ECF 20-1. Plaintiffs filed an opposition ("Opposition"), ECF 26, and Epic filed a reply ("Reply"), ECF 31. I have considered all of the filings, and find that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Epic's Motion will be granted.

---

[1] The Court issues this Amended Memorandum Opinion to correct a typographical error in the Conclusion on page 8 and clarify that Defendant's Motion to Dismiss was ECF 20, not ECF 26. An Amended Order follows to clarify that Counts Five and Six of the First Amended Complaint are dismissed.

# I.    FACTUAL BACKGROUND[2]

Plaintiffs are independent community retail pharmacies located in New York and New Jersey.  ECF 17, ¶¶ 17-26.  As a Pharmacy Services Administration Organization ("PSAO"), Epic enrolls independent pharmacies into its pharmacy network.  *Id.* ¶¶ 27-28.  The members of Epic's network are permitted to participate in various pharmacy benefit plans offered by health insurers and sometimes managed by pharmacy benefit managers ("PBMs").  *Id.* ¶ 28.  The members register with Epic, or other PSAOs, to gain access to participation with the PBMs and to streamline the application process to participate in the PBMs' networks.  *Id.* ¶ 35.  Epic enters into contracts with the PBMs, on behalf of all of the pharmacies in its network, to allow the pharmacies to serve individuals whose pharmacy benefits are administered by the PBMs.  *Id.* ¶ 29.  The PBMs pay Epic directly for the pharmacy services rendered by its members, and Epic remits the payments to its members.  *Id.* ¶ 30.  Each of the Plaintiffs signed contracts to become members of Epic's network.  *Id.* ¶ 33.  Those contracts describe Epic as Plaintiffs' "Attorney-in-Fact," meaning that Epic serves as Plaintiffs' fiduciary when it contracts with PBMs and third-party payors.  *Id.* ¶¶ 33-34.

The instant dispute centers around a January 1, 2018 contract, and a May 10, 2018 addendum to the contract ("the Addendum"), between Epic and Caremark, one of the nation's largest PBMs.  *Id.* ¶¶ 32, 36, 39.  Essentially, Plaintiffs allege that Epic breached its fiduciary duty to them, and its contracts with them, by entering into the Addendum, which contained terms unfavorable to Plaintiffs, and by withholding payments due and owing to Plaintiffs.  ECF 17.

---

[2] The facts are derived from Plaintiffs' First Amended Complaint, ECF 17, and are accepted as true for purposes of this Motion.  All reasonable inferences to be drawn therefrom are drawn in Plaintiffs' favor.

## II.    LEGAL STANDARD

In this Motion, Epic seeks dismissal of Counts Five (Violation of Maryland Consumer Protection Act) and Six (Violation of New York Consumer Protection Law).  Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss.  *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . .."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (*per curiam*).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

# III.    ANALYSIS

Plaintiffs' attempt to employ consumer protection laws in this dispute tries to fit a square peg into a round hole.   Initially, Plaintiffs fail to allege the elements of either state consumer protection statute.   As to Count Five and the Maryland Consumer Protection Act ("MCPA"), Plaintiffs allege the following:

> 115.    Maryland's Consumer Protection Act contains a prohibition on certain unfair or deceptive practices, which is found under MD COML 13-301, et seq.

> 116.    Epic's decision to unilaterally withhold payments due and owing to MedEx in the amount of $112, 488.95, to Maple in the amount of $96,658.52, to Madison in the amount of $38,332.38, to Refuah in the amount of $13,927.17, and to Westgate in the amount of $14,747.81 constitutes a violation of Maryland's Consumer Protection Act and its prohibition on certain unfair or deceptive trade practices, found under MD COML 13-301, et seq.

> 117.    As a direct and proximate result of Epic's conduct, Plaintiffs have been injured.

ECF 17, ¶¶ 115-17.  The MCPA defines a "consumer" as "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." Md. Code Ann., Com. Law § 13-101(c)(1) (West 2019).   "Consumer goods" and "consumer services" are defined as goods or services "which are primarily for personal, household, family, or agricultural purposes."   *Id.* § 13-101(d).   Further, "service" is defined as "building repair or improvement service," "subprofessional service," "repair of a motor vehicle, home appliance, or other similar commodity," or "repair, installation, or other servicing of any plumbing, heating, electrical, or mechanical device." *Id.* § 13-101(j)(1)-(4).  Accordingly, none of the services at issue in this case constitute "consumer services" under the MCPA.

Plaintiffs' theory in the Opposition, that Epic's misrepresentations to it have some end effect on the customers using their pharmacies to obtain prescription medications, is unpersuasive. ECF 26.  Plaintiffs are correct that the defendant in a MCPA case need not be the actual seller of

the consumer goods. *See MRA Prop. Mgmt., Inc. v. Armstrong,* 426 Md. 83, 109-110 (2012) (holding that a condominium association and its management firm could be liable under the MCPA for providing deceptive operating budgets to the purchaser of a condominium). However, in *MRA Property*, the defendants had a legal duty to provide certain information in order for a sale of consumer realty to proceed. *Id.* at 110. Thus, the defendants had direct involvement in the sales transaction to the consumer, and were alleged to have provided the deceptive information in connection with that transaction. *Id.* Here, Epic's involvement in the consumer transaction between the customer and his pharmacy is far more tangential, and occurs entirely behind the scenes. Epic made no representations to any end-user consumers, and the end-user consumers did not, even indirectly, receive any information provided by Epic. In other words, the alleged "deceptive trade practice" did not occur in the sale of consumer goods, as required by the MCPA. *See Morris v. Osmose Wood Preserving*, 340 Md. 519, 541 (1995).

In addition to the problematic legal theory, the First Amended Complaint does not allege facts establishing the elements of an MCPA claim. First, the First Amended Complaint does not use the phrase "consumer good," contains almost no reference to the pharmacies' customers, and certainly does not describe any effect that Epic's alleged actions had on those customers' purchases or purchasing decisions. Second, Plaintiffs have not alleged any particular unfair or deceptive trade practice by Epic, as defined in section 13-301 of the Maryland Commercial Law Code. They simply allege that Epic acted in bad faith during its negotiations with Caremark on Plaintiffs' behalf, which is not an act that might have "the capacity, tendency or effect of deceiving or misleading consumers," § 13-301(1), and does not fit neatly into any of the other defined categories of unfair trade practices. Plaintiffs have not alleged that the details of the negotiations between Epic and Caremark, or the reimbursement transactions between Epic and Plaintiffs, have any effect

on the customers of the pharmacies, who likely have no idea that either Epic or Caremark is involved in their purchase of prescription medications from their chosen independent pharmacy. Ultimately, Epic is alleged to have failed to make payments owed to Plaintiffs, and is not alleged to have deceived or misled consumers. Thus, Plaintiffs have not pled a violation of the MCPA.[3]

As to Count Six, even assuming that New York law applied to this suit, Plaintiffs' allegations are equally deficient. It is true that New York consumer protection law is broader than the MCPA. New York "declare[s] unlawful" any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a) (McKinney 2019). Thus, the restriction to transactions involving "consumer goods" in Maryland is not present in New York. However, to recover under section 349, a plaintiff must prove "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Benetech, Inc. v. Omni Fin. Grp., Inc.*, 984 N.Y.S.2d 186, 188 (App. Div. 2014). The "conduct of business organizations may be found to be consumer oriented" where it is "alleged that consumers at large may be affected" by the organization's conduct. *Accredited Aides Plus, Inc. v. Program Risk Mgmt., Inc.*, 46 N.Y.S.3d 246, 257 (App. Div. 2017). Despite that requirement, no effect on consumers at large has been alleged in this case. Instead, Plaintiffs allege the following:

> 119. New York Consumer Protection Law, found under NY Gen Bus § 349 et seq., prohibits certain Deceptive Acts or Practices, including deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the state of New York.

> 120. Epic's decision to unilaterally withhold payments due and owing to MedEx in the amount of $112,488.95 and to Maple in the amount of $96,658.52 constitutes

---

[3] Plaintiffs' allegations that Epic's conduct violated Maryland and New York laws regarding Maximum Allowable Cost (MAC) pricing will properly be considered in evaluating Count Four, their breach of contract claim pertaining to MAC pricing.

a violation of New York's Consumer Protection from Deceptive Acts and Practices found under NY Gen Bus § 349 et seq.

121.    As a direct and proximate result of Epic's conduct, Plaintiffs have been injured.

ECF 17, ¶¶ 119-21.  Those allegations make no reference to "consumers at large," and only allege that Plaintiffs, the independent pharmacies, have been injured.  Further, once again, there is no allegation that Epic engaged in deceptive or misleading acts or practices, just that Epic negotiated an unfavorable agreement when acting in a fiduciary capacity and then unilaterally decided not to remit payments Plaintiffs were owed.

Ultimately, Plaintiffs have not alleged a plausible claim for violation of the consumer protection statutes of either Maryland or New York.  Accordingly, Epic's Motion to Dismiss Counts Five and Six will be granted.

## IV.    CONCLUSION

For the reasons set forth above, I shall grant Epic's Motion to Dismiss, ECF 20, and dismiss Counts Five and Six.  A separate implementing Order follows.


Dated: September 30, 2019                                    _____/s/_____

                                                            Stephanie A. Gallagher
                                                            United States District Judge