UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 2, 2019

LETTER TO COUNSEL

      RE:    *Chemist Corner, Inc. v. Epic Pharmacy Network, Inc.*,
               Civil No. SAG-19-00331

Dear Counsel:

      I have reviewed the Motion to Dismiss Defendant's Amended Counterclaims ("the Motion"), ECF 37, filed by Counter-Defendants Chemist Corner, Inc. d/b/a Medex Medicine Express ("MedEx"), Monsey Family Drug Store, L.L.C. d/b/a Maple Pharmacy ("Maple"), Maple Rx, L.L.C. d/b/a Westgate Pharmacy ("Westgate"), Madison Rx L.L.C. d/b/a Madison Pharmacy ("Madison") and Refuah Rx L.L.C. d/b/a Refuah Pharmacy ("Refuah") (collectively "Counter-Defendants"). I have also reviewed the opposition filed by Counter-Plaintiff Epic Pharmacy Network, Inc. ("Epic"), ECF 46, and the Counter-Defendants' reply, ECF 47. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth herein, the Motion will be denied.

      The Amended Counterclaim in question consists of twenty counts, which amount to four substantive causes of action alleged separately against each of the five Counter-Defendants: Declaratory Judgment (Counts I-V); Breach of Contract (Counts VI-X); Unjust Enrichment (Counts XI-XV); and Indemnification (Counts XVI-XX). Each count implicates the Pharmacy Participation Agreements ("PPAs") between Epic and each of the Counter-Defendants. To summarize a highly complex factual background for the purposes of this motion, Epic is a network of independent pharmacies joined together for the purposes of participating, as a larger entity, in pharmacy benefit plans. *See* ECF 35-2 at 4. In May, 2018, Epic entered into an agreement with Caremark, a large Pharmacy Benefit Manager ("PBM"), under which Epic had to reimburse tens of millions of dollars to satisfy a deficiency claimed by Caremark. *Id.* at 10–11. Caremark and Epic reached a settlement, under which Epic agreed to pay Caremark $34,800,000 to satisfy the deficiency in full ("2018 GER Deficiency"). *Id.* at 11. Because the 2018 GER Deficiency arose from overpayments that Caremark had made to Epic's member pharmacies throughout 2018, Epic now seeks reimbursement of certain sums from each of its member pharmacies, to compensate for its share of the payment Epic made to Caremark.

      In the Declaratory Judgment counts, Epic seeks a declaration, in relevant part, (1) that each Counter-Defendant is obligated under its PPA to pay Epic for the portion of the 2018 GER Deficiency, paid to Caremark, that was attributable to overpayments made to that particular Counter-Defendant, and (2) that Epic can withhold funds collected until each Counter-Defendant's liability is paid. *See, e.g.*, ECF 35-2 at 12–13. The Counter-Defendants argue that Caremark must be joined as a necessary party to the Declaratory Judgment counts of the Complaint. ECF 37-1 at

4–6. I disagree. The requests for declaratory relief do not require the Court to make any findings regarding the contract between Caremark and Epic. The dispute between Epic and Caremark regarding the 2018 GER Deficiency has been resolved, and the only questions presented in this litigation are whether and how Epic can recoup any of the settlement funds it paid to Caremark from the Counter-Defendants. *See* ECF 35-2 at 11 (stating EPIC and Caremark entered into settlement agreement to satisfy the 2018 GER Deficiency). Thus, the prospective judgment in this case will not prejudice or affect Caremark in any sense, and the Counter-Defendants have not established that Caremark is a necessary or indispensable party to the litigation. *See Am. Gen. Life & Accident Ins. Co. v. Wood,* 429 F.3d 83, 92 (4th Cir. 2005) ("The burden of proof rests on the party raising the defense . . . to show that the person who was not joined is needed for a just adjudication.")

Counter-Defendants argue that the breach of contract claims should be dismissed because Epic does not identify specific contractual provisions in the PPA that Plaintiffs allegedly breached. 37-1 at 12. In making that argument, however, Counter-Defendants only cite the more general language in each individual count, ECF 37-1 at 8-10, ignoring the fact that the counts also adopt by reference the specific factual allegations made in earlier paragraphs of the Amended Counterclaim. ECF 35-2 ¶¶ 69, 73, 77, 81, 85. Those earlier paragraphs contain specific reference to the contractual provisions that Epic alleges have been breached. *Id.* ¶¶ 19, 32. For instance, according to the Amended Counterclaim, section 2.F of the PPA provides that Plaintiffs shall repay EPIC for any amounts paid to the pharmacies in error. *See* ECF 35-2 at 5. Counter-Defendants also challenge Epic's calculation of the overpayment amounts. ECF 37-1 at 10. However, determining whether the calculation is proper is an issue that would be resolved at trial. For present purposes, taking the allegations in the Amended Counterclaim as true to consider the motion to dismiss, Epic has sufficiently pled its claim.

Similarly, Counter-Defendants' efforts to argue for dismissal of the unjust enrichment claims are unsuccessful. First, at the motion to dismiss stage, a party may maintain both claims for breach of contract and claims for unjust enrichment, although ultimately, equitable relief is unavailable if the parties' rights are governed by contract. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters.,* 190 F. Supp. 2d 785, 792 (D. Md. 2002) ("[A]lthough [plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract governing the subject matter is in dispute."). Second, if taken as true, Epic has pled that Counter-Defendants have retained the GER overpayments with knowledge of facts that would make it inequitable for them to retain the benefit. For instance, the amended Counterclaim alleges that Plaintiffs have been aware that the burden of repayments would fall on other member pharmacies. Furthermore, the parties' agreement to permit Plaintiffs to retain the payments during the pendency of the litigation, in exchange for the posting of a bond, does not have any effect on the parties' ultimate legal rights to ownership of the funds.

Finally, Counter-Defendants suggest that Epic's Indemnification claims must be dismissed, because the indemnification provisions in the PPA only require indemnification for "liabilities arising out of or related to any Pharmacy Service or the sale, compounding, labeling, or dispensing of any drug or item by Pharmacy." ECF 37-1 at 7 (citing PPA at 2(I)). Counter-

Defendants allege that because the liability Epic seeks to recover arises out of its contract with Caremark, it does not arise out of or relate to pharmacy services. *Id.* Epic counters that the sale of drugs by its member pharmacies generated the GER deficiency in the first place, and thus the indemnification provision applies. ECF 46 at 18-22. Viewing the facts in the light most favorable to Epic, as I must at this stage, dismissal is not warranted, because Epic has pled a factual nexus between the provision of pharmacy services and the GER deficiency for which reimbursement is sought.

      For the reasons set forth above, Counter-Defendants' Motion to Dismiss the Amended Counterclaim, ECF 37, is DENIED. Despite the informal nature of this letter, it should be flagged as an Opinion and docketed as an Order.

      Sincerely yours,

      /s/

      Stephanie A. Gallagher
      United States District Judge